Next case is number 23 dash 1 2 4 0 Lenny Ross versus administrator East Jersey State prison at all Next case is number 23 dash 1 2 4 0 Lenny Ross versus administrator East Jersey State prison at all Mr. Nettle? Thank you your honor. Did I pronounce that correctly? Yes you did. Thank you. Okay. May it please the court. AP Shashua, Mr. Allman and my client's family seated in the back row. I represent Lenny Ross, I'm requesting two minutes for rebuttal. Granted. We come here after the court had issued a text order a couple weeks ago asking to address the exhaustion issue so I don't know if you want me to address that first. That'd be great. I'm happy to do so. Thank you. The. This started out as a one issue appeal now it's with the exhaustion issues a two issue appeal, which actually has two sub issues one being whether the issue was exhausted in state courts and second being whether or not Dave has waived that exhaustion requirement. And I submitted a letter to the court, citing Sharifi chuck cathol for the proposition that an admission by the respondent in response to a claim that the state exhaustion had occurred in a habeas petition is suffice to waive the exhaustion requirement. And that's what occurred here. Before you get to waive. So are you throwing in the towel on the first part of it. I think I have to. Yeah, because in the, in the PCRA court. It was the allegation was ineffective system of trial counsel, and that was what was raised on appeal to in the spirit court. Right. Well, in the superior court law division, it was both. It was in his pro se PCR application. He raised ineffective sense of trial counsel and ineffective sense of the council, but on appeal, just trial and appeal his assigned counsel only raised the trial issue and in his petition for certification to the Supreme Court, which is not part of the record, but I actually obtained it after the order from this court came, I can make it part of the record if you wish I can, but I'll concede that he did not raise the ineffective. So, hence, hence your appropriate focus on on waiver. So, my understanding from the case law is that the waiver has to be express. Correct. Okay, so what's the express waiver here what is that. What's the verbiage what does that look like here. Did the verbiage is it can be found in the appendix at a 126 is admitted the that's the that's the verbiage that the respond use in paragraph 13 of my client's petition which can be found on a 87 of the appendix. It asked the exhaustion question. Did you raise all of these claims to the highest court in the state courts, and my client checked off the box. Yes, it was pro se. He believed he did. And the state admitted that. So when the state admitted that. And in Sharif, it's important that the state erroneously in Sharif admitted that the exhaustion claim was that the claims were exhausted in state court, and the court held that didn't matter that whether it was correct or incorrect the fact that the state admitted that the claims were exhausted was enough to wave to be considered an express waiver of the exhaustion requirement. Now, the states. And I'll just quote language from Sharif, in the last paragraph, section 2254 be three requires that the state's waiver of exhaustion be expressed, but it did not demand the invocation of any magic words here by conceding exhaustion in its answer to Sharif's habeas petition. The state clearly explicitly and unambiguously wave the exhaustion requirement I think the same thing occurred here. Doesn't he have to raise it at each level of review though so how does that cure the failure to raise it in the appellate. I think that the waiver. And of course it's in this course discretion whether to accept the waiver and grant Barry is the case that says that it's in the interest of justice data Granberry be Greer was US Supreme Court case 41 us 129 says that it's in the interest of justice standard whether to accept the waiver, but the, the question of whether or not he has to raise that just the Supreme Court. The states. Just help me understand the appellate department right because you have this odd, odd point where it isn't raised in the appellate division, the appellate division goes on to address it any in a footnote correctly. And then it's waived and then it's that it's that it's not raised in the Supreme Court but that the state says, admit. So what do we do, let's leave aside the Supreme Court for a moment, what do you do, does that appellate division failure to raise their matter under for our, for our review. The failure to raise it in the appellate division, I think is no different than the failure to raise it before the state Supreme Court and the fact that it, the, my client it admits it in the Supreme Court night. We don't have a position in the appellate division right. Or are you going to say that the or is it that the admitted before the Supreme Court goes all the way back goes back to the appellate division. I would submit that it goes through the entire state court system. And the fact that the state admitted it and there, and didn't raise it as a legal argument in their answer and didn't raise it in response to the motion that we filed to to reopen and nor did they raise it before this court. So let's assume you get over the exhaustion hurdle. Your client received an appeal. So, how could that have been an unread I know wasn't the appeal he wanted. In fact, it wasn't the appeal that he indicated when he checked the boxes because he did his part and he checked. He checked the box for appealing the merits and he checked the box for a sentence. Right. So, having said that floors or Tega was no appeal at all. Here there was, let's call it from your clients perspective a defect a defective appeal or partial appeal. So how could have been an unreasonable application of floors or Tega in light of the factual distinction between that case in this case, because the way the New Jersey State Court appellate system works, is that the substantive appeals and their sentence appeals are placed on different tracks. So, the public defender took action to place it on only one track, but not the other track. And if it's not that other track, and it never gets to ride the train. Is that really true, it could get transferred. It could and then it's a discretionary call by the by the appellate division. So, when he's on the wrong track. He, it doesn't mean that the full availability of appellate relief is unavailable to him. It means that he's probably not going to get it, but but it rests to transfer tracks with the discretion and then there's a motion file that says please use your discretion transfer me tracks, and they say no. So, at one level, you know, it's almost like he was the first track all along because it had there been motion. Had there been merit to that motion, then, then perhaps they will transfer tracks, but it's not like when you check when the wrong boxes is checked and you're on the ESO a that forever there, there's an out and and Flores Ortega seems to not address circumstances where you could still get appellate review full appellate review that was just off the table and Flores Ortega full appellate review still available if you're, if you start on the wrong track it's just harder to come by. Isn't that enough to distinguish the pretty big rule of Flores Ortega which takes us outside of what's normally Strickland. Well, I would submit your honor the difference that we're talking about is that here, the motion was that was a pro se motion which is his attorney never even filed on her part was never even decided, there was never an order from the appellate division denying the motion. There was never even an order from the appellate division regarding the issue that he wanted to raise the withdrawal of the guilty plea. It was never decided on by any state appellate court, whether or not he fulfilled the Slater standard it's not the Slater standard is pre a pre sentence motion to withdraw the guilty plea, the safety Slater says it's supposed to be liberally construed and with any ambiguities to be determined in favor of the defendant. That's it that's a safety Slater center so there it was right for review in the appellate division whether or not the trial court properly denied that that motion. And because it was never briefed, and I would say they'd be the appellate attorney, she did alert the court to the fact that my client made this pro se motion and wanted it Davis Slater motion reviewed but she didn't argue anything and in fact she misstated, whether or not he had made a colorable claim of innocence. Yeah, I was gonna say there, there seemed to be a strong difference of opinion between client and lawyer at that point regarding the viability of the appeal on merits, right. Well, maybe I'm misreading the record tell me if I am but I thought I got the sense that the council was really laser focused on the sentencing appeal and. Well, and apparently she thought that that was the only avenue of of viable relief, and my misreading that or it's, it's hard to tell based on the record because she doesn't really make much of a record, and she doesn't make much of an argument even she just says he wants his plea withdrawn she doesn't argue the Slater factor she doesn't, and in fact she's asked a question by the appellate judge. Well, I mean if you think your client has grounds to withdraw plea you're banging that drum pretty hard. Right. I mean, except especially after a sentence that was viewed as as harsh or unfavorable. Right, you would, you would hope, except that's not what happened here and it but it's not we can't infer that it was based on any review of the record and the reason I say that is because she was asked a direct question did your client admit guilt. And in his factual basis for guilty plea yes he did admit guilt and which is an accurate answer except at sentencing. He looked the victim's father in the eye and said I did not murder your son. And he went, he told the victim's family, I mean the judge doesn't have to accept that it's true, though, you don't have that sort of thing happens with. It's not majority of the time but it's not rare that that sort of thing happens right in the context of emotion to withdraw guilty plea however it's the question is whether there's a color of a book of innocence doesn't mean that the judge has to accept it. And what was the color will claim of innocence here, it was his direct and unequivocal recantation of the guilty plea factual basis where he says I did not kill this man. You're this man did not deserve to die but I did not kill him. And, and he repeated that in front of the job after any after somebody swears under oath to tell the truth and admits that they did kill somebody. That is enough when it's coupled with the weaknesses in the case that he argued in the motion to withdraw the guilty plea which is the lack of DNA evidence they default to get witness testimonies that was subject to the weight hearing that corroborates is with, but there's, you know, there's no standard in state court that says you have to have another suspect or you have to have affirmative proof of innocence, it's a colorable claim of innocence, and every state the Slater itself. The defendant got up and gave a factual basis for his guilty plea, where he admitted guilt, and nevertheless the state Supreme Court reversed and remanded and which allowed him to withdraw his guilty plea because he asserted a colorable claim that maybe that factual basis was was not true. And that's it that's it's a very low standard in state court to to to reach that so there was an argument there, because the, and the judge judge Daniel, he in denying the guilt to withdraw the guilty plea. And which is not insubstantial not insubstantial but the question is whether what would be the prejudices of state by withdrawal of the guilty plea which would be do they lose witnesses do they do that does it affect the quality of their proofs and he didn't address that at all. He just said well they spent a lot of money the victim's family was put out was all true, but it's not one of the Slater factors. So, there was ample grounds to for a direct appeal there you get. All right, so let's assume, let's assume you're on solid footing on all that on the merits. The standard is still pretty difficult and the standard is unreasonable application of clearly established law, as the side by the Supreme Court, namely, Flores Ortega, right. Judge I know I'm out of time, keep keep going. Thank you. So, right. So, I'm positing that you're correct on the merits on all that. But in order to prevail here you still have to show that it was an unreasonable application of Flores Ortega, and what I'm wondering about is how could that be true. So, if in essence you're asking, I guess you're going to tell me you're not asking for an extension of Flores Ortega but it sure it sure looks to me at first blush like an extension Flores Ortega, what am I, what am I wrong on. I think it comes back to my two tracks argument is which is that Flores Ortega says that if, if an appeal has to be filed on behalf of a defendant if the attorney reasonably believes that it's being requested. And here's that's not in question that he was not reasonably believe he directly and expressly and unequivocally requested an appeal of this later motion. That's, as you noted in the beginning this that was in the papers, and that wasn't done, it was not just that it wasn't raised in an argument. If a pro se, if a pro se petitioner says I want you to appeal for issues. And the lawyer only appeals three, you're saying that's within the heartland of Flores Ortega that's that's no good. I wonder if the fourth is completely frivolous in an objective sense. Well, that would only occur after a review of the record and the attorneys analysis of whether or not these claims are viable at the time that the case information statement is filed, none of that could have been done yet. That was, and in fact, but we're just talking about that I understand your, your factual argument but in terms of what Flores Ortega holds, it seems like the rule that you're advocating would be that an appeal must be filed as to all issues, raised by the client, in order not to not be subject to the presumed prejudicial standard. I would submit that I'm not taking it that far. It's not, it's not an issue by issue question. It's whether you appeal the conviction, or not, he's, he's appealing. There's a conviction and the failure to appeal the commit conviction was tantamount to no appeal at all. Exactly. Okay. All right, we understand your position will hear you on rebuttal. Thank you. Oh, one last question. Okay, sorry. Flores Ortega issue comes up. Not in the, in the appeal, excuse me in the, in the habeas petition that's filed with the district court right it comes up in the 60 be motion. I don't think this is something you touch upon so latitude for you for you to address this, if you can. Is that a second or excessive petition that would then deprive us of jurisdiction to look at the Flores Ortega issue, or is there some way that it's still before us that we could consider. Okay. As you say in brief that issue. What I don't believe there's any certainly any caseload I'm aware of that would suggest that it would be second or because because the Supreme Court, 2007 talking about when a rule 60 be petitioned constitutes a second or successive 60 be motion constitutes a second or successive petition, and it seems to suggest that 60 be motions, along these lines that present a new substantive grounds would be second or successive requiring permission before there's before they may proceed jurisdiction. And so, you know, that's, you know, that's also kind of a huge case. Well, and the way I see it, then, Your Honor is, it's not a separate ground. It's still within the same ground that was raised in the original petition based on just let me just press you on that. Sure. I'm critical, absolutely critical I think to your, to your Flores Ortega argument is the case information statement. I think it's absolutely critical to case that only appears in the rule 60 be motion isn't. And if the SEC in through 60 be motion is second or successive for which we have no jurisdiction absent approval, then we can't consider the case information statement at this stage of the game, and if we can't consider that, then, you know, that's not too good for the fate of the underlying case appeal unless and that will really make it complicated. You hadn't exhausted your wonderful cycle of challenges, meaning the time to appeal the underlying habeas denial hadn't run yet and the 60 be motion. If construed as one told the time for appeal. And therefore, in fact, everything is before us because it wasn't second or successive which gets into cases like Santorelli and Blystone but I will suggest that maybe this is something that we might need. We'll give you a chance to bring on both sides can brief that issue. And just, just to answer your question to what the state, the district court granted motion to supplement the record with the case information statement, and therefore brought that into the first petition. And then judge makes a really interesting point, it might be a lot of information coming cold. But, but that's a really interesting point because usually a rule 60 be motion gets a separate appellate track but if it's within I think 28 days, then we merge the appeal, then it can be reviewed in connection with the underlying appeal. And so the question is kind of an interesting one. Am I getting where you're coming from, which is, which is what to what extent does that kind of timing back end timing affect front end second or success. But we do think it's more money subsidy, it does seem important because the floor is a presumption of prejudice versus the strickling prejudice is two different standards and arguably, that was never was never raised before then, and the only the only way we get that, it would seem as if we consider what the district court held in the 60 be motion, because it wasn't part of the original habeas petition, so it seems like it is relevant to the scope of our review here which is why. I think it's Detroit and said it might seems like would be appropriate for supplemental briefing and we can direct that. I'd be happy to have the opportunity for you. All right, we'll hear you on rebuttal. Thank you. Mr. Let's hear from. Sure. May it please the court, Linda Shashua. I said that wrong Shashua Shashua Shashua apologies on behalf of the Atlanta County Prosecutor's Office. Do you, is there anything you want to say on this 60 be assured you just want to defer to supplement briefing on that. Okay. Especially for the consequences that could come from that. This case is really about clarifying the division of labor between that our courts have recognized for 40 years between a client, and the lawyer, especially the appellate attorney, and the difference that we give to an appellate attorney to select the issues to be raised. Not only is this argument that appellant is raising an extension of Flores Ortega, but it's also undoing four decades of SCOTUS of Supreme Court law, recognizing that division of labor as well. No, I mean, Gundy. I know Gundy was decided after this case but I mean Gundy the lawyer didn't file an appeal because the lawyer had bargained a good sentence in exchange for waiver of appeal and the Supreme Court said that was an effective assistance of counsel. So, even in 2019 which was after this case, I don't think this case was in either brief Garza versus. I'm sorry, I meant to say Garza versus Idaho. I said Gundy. This is not an administrative. I'm very glad. I know that case. Thank you. I was referring to Garza against Idaho. Garza v. Idaho, as I recall, now that I misstated the name of the case, but correct me if I'm wrong, I thought what happened there was a pretty violent crime. A guy got pleaded down to a favorable sentence and a large part of the reasoning got pleaded down to a favorable sentence. It was a rule 11 agreed upon sentence subject to court approval and, you know, a big part of that negotiation with the state of Idaho was that he waived his appeal rights. And then when he, shortly after the sentencing, says, I want to appeal, the lawyer says, we can't. We waived that. So the lawyer did what I thought would be considered the lawyer's ethical duty, but the Supreme Court has seen it otherwise and said that lawyer was ineffective. And we have law in our jurisdiction, maybe, for that as well. But what the Supreme Court said was two things that relate here. One is there's always something to appeal. But secondly, and so that's why the waiver issue isn't viable. But secondly, and what I'm trying to argue about is that that court still recognized the division of labor during the appeal. It's still talked about for appellate counsel to decide the issues and there's no presumption of prejudice in that decision. They reaffirmed Jones v. Barnes. I mean, that makes a lot of sense if you're talking about, you know, issues 2 through 7 or 3 through 11. You know, the lawyer has to exercise professional judgment consistent with the rules of professional conduct. But isn't that a different situation than here where you're talking about a true binary between, look, I'm appealing my conviction or I'm appealing my sentence or I'm appealing both? I think it's a true binary in this sense. Was a notice of appeal filed or was it not? That is what Flores-Ortega is dealing with and its progeny. It's always talking about should we have consulted? Don't you acknowledge the possibility the Supreme Court would extend Flores-Ortega and say that it applies also to this situation? I don't, and here's why. Because this was a – the Flores-Ortega situation was just let's figure out what the client wants. But there's no discussion once that appeal is on track, if we're talking the right track or the wrong track. Now you're talking about discretionary issues of deferring to an appellate counsel's discretionary issue, which Strickland actual prejudice is fully equipped to assess. All we're talking about with Flores-Ortega – All right, but if you're wrong on that, do you lose the case? No, but it's the single issue before this court, as I understand it, until the 60B. Well, but I thought your argument would be that even if the Supreme Court would extend Flores-Ortega, it's still an extension of Flores-Ortega. And if it's an extension of Flores-Ortega, then what the court did here can't be contrary to existing Supreme Court precedent. True. That's – our argument is obviously that we don't think Flores-Ortega represents that. If the Supreme Court did extend it, you can't really hold a state court to that standard. Not having anticipated the extension. So it fails on every level. So, I mean, the strongest reading, at least I think, for your opponent is that Flores-Ortega says we're outside of the Strickland paradigm if you don't preserve your full appellate rights through a notice of appeal. So that's the strongest reading of it, right? We're outside of Strickland if you don't preserve your full appellate rights through a notice of appeal. So what happens downstream with the briefing, what happens to everything else like this, we'll get to later. We can work out client, we can work out attorney. But at the notice of appeal stage, I think the strongest reading of Flores-Ortega is, hey, if you don't preserve everything through that notice of appeal, then you're in shortcut land, no prejudice land. And so if that, why isn't that the right reading of Flores-Ortega? Why can't we just put everything else down the road and say, look, we've got a Flores-Ortega issue where the Supreme Court said you don't have to show prejudice if you, in factly there, you didn't preserve all of your rights for appeal. That's factually what happened here. Not all the rights for appeal were preserved. And so why aren't we squarely within Flores-Ortega? Well, of course, the back end of that is we think the rights were preserved. I really do want to clarify this route, which the court may already understand. But the rights were fully preserved because it's not really two tracks. That's kind of a red herring. The appellate attorney starts the case maybe on the track of we're going to go toward this ESOA sentencing program. But as they review the case, they can decide to add issues. And there are substantive issues on that checklist. She decided not to add the issue of the guilty plea. That's an actual prejudice analysis, not a presumption of prejudice. How would you know until you're starting to review the case? So in essence what you're saying is even under the absolute strongest reading of Flores-Ortega, the full range of appellate options was available. Now it was slanted at that point in time, totally slanted. You had to kind of get the courts through its discretion to get you back in. But what you're saying is we would have to read Flores-Ortega to say, not only do you have to preserve the full rights of appellate review, but you have to do so on equal footing across the board. Correct. And that would completely undermine the purpose of the ESOA program. It would proliferate countless frivolous appeals where 90% of our cases plead. This is a useful tool. Most of the appeals are equivalent about the sentence, not the conviction. Correct. But there are substantive issues on that checklist that routinely occur. I think the KBIA court talks about that. There's some state law cases that talk about that. It's on the checklist, the motion to withdraw. So my point is that the minute we start talking about should this issue or that issue have been raised, we're out of presumed prejudice land because the appeal has started. And really what Flores-Ortega was concerned with was when there was no appeal, where there was no, what do they say, entirely missing or something. What's your view on waiver of exhaustion? So there's absolutely no waiver. Paragraph 13. Why did you admit the allegation? The allegation, not to be lawyerly. Well, we like that here. This is the one place it's accepted. I'm reading the allegation. But paragraph 13A simply says highest court. That does not address O'Sullivan's, Evans, that you need a full round. It's clear that it was not before the appellate division. So even if you grant that that was a concession on the highest court, it gets you nowhere. You need a full round. And the appellate division was simply waived. That's what the court said in its footnote. When it said. Repeat the questioning, please. My question was, have all grounds for relief that you've raised in this petition been presented to the highest state court? Okay. So your response, it's that sheds no light on what was presented to the intermediate appellate court. Okay. And the second part of that question is the defendant answered not applicable. That's not a concession. So there's no waiver. And the waiver under Sharif. Does it have to be express? Absolutely. That's in the statute. What does an express waiver look like? It's clear, unambiguous, and there's a third term. But it's clear and unambiguous. And it expresses in the statute. So Sharif tells us that it's got to be clear and unambiguous. This certainly was not either, much less a waiver. It's not a waiver. Should it have been raised? That's a different question. It's a statutory, right? Exhaustion is a statutory requirement. So whether the government raises it or not, the petitioner can't move forward until he's exhausted and satisfied that part of the statute. I mean, is this exhaustion or is this procedural default? Like, these two weave together all the time in everyone's mind. But, like, exhaustion seems to me, do you go to the right court? Procedural default, at least on courts with a waiver issue, seems to me, did you bring the right issue to that court? And so should we think of this as exhaustion or should we think of this as procedural default? This is exhaustion. And it's exhaustion because there's a difference between the two issues in the petition and the one that carried on. The one issue was there's a due process issue. We blame the court for having this procedure and not giving us the due process. That's not the same as defense attorney was ineffective for failing to give us any appellate process. I guess what I'm saying is exhaustion strikes me as do you go to the right court? Have you tried to go to the right court? Now, if you leave an issue behind when you go to the right court, you might be violating a state procedural rule that says bring all your issues with you. That's a state procedural rule generally. And so if there are two issues and only one of them goes to the right court, isn't that really violating that state procedural rule of not bringing everything with you as opposed to never showing up at the right court? What do you think? It's not mutually exclusive. This was not exhausted. But even if, let's say, it was found to be futile to go back to state court, then we would go to procedural default. And it's defendant's burden at that point to show a miscarriage of justice, cause and prejudice and a miscarriage of justice. He fails on both. But exhaustion ends it. When you fail to exhaust, you don't bring this claim. This claim, it's a substantially equivalent claim it would have to be. And there's no substantial equivalence when you're talking about due process versus ineffective assistance. The main concern with Flores, obviously, is cutting off the discussion about an attorney. In Flores-Ortega, the court was concerned about putting too much on a defendant. He's got to say, I want this appeal. This would make it even worse for a defendant to have to decide what kind of appeal the defendant wants and what issues should be raised that early on to require one route or the other. That's an internal form. Maybe the public defender's office uses it to say when a defendant doesn't want an appeal, they can cover themselves that way. But the form is meaningless. Every appellate attorney, he got his appeal by virtue of a notice of appeal being filed. And in New Jersey, that two-tiered system, the appellate division system, allows for that track to be changed at any point. As the attorney reviews the case and gets into the records, they can request it to be moved onto the plenary, which this attorney did. And frankly, the only issue that the defendant in this case wanted that wasn't raised to the appellate division was the, I believe what was left was the eyewitness identification, which was completely meritless. These were two neighbors who knew him over a period of time. Did she ask that withdrawal of the guilty plea be moved to the regular? She asked for the whole case. The whole case to be moved to the regular? Absolutely. She did. Not only did she argue this later issue, she gave advance notice. Mr. Nettle gave the impression that it was very sort of tepid or unserious effort to move it from the sentencing calendar to the regular. I think it's very common to say, to repeat a claim that your client wants. I don't think that makes it any more, any less effective to say that my client has asked. I promised he would have the opportunity to move this to the plenary calendar. Well, when you say my client has asked, that's a strong signal that the lawyer doesn't believe in the claim. You're just doing it to placate the client. It's probably true, but it's not, it's technically still asking the court for that relief. Yes, endorsing and asking. Unless the court has questions. Okay, thank you, Ms. Shashua. Rebuttal, Mr. Nettle? Thank you, Your Honor. First, with regard to the exhaustion, Ms. Shashua said that the paragraph 13 was not an admission or a concession because of the fact that it did not specifically refer to the appellate division. It only asked about, and this is similar to a question Your Honor asked earlier. And the question adverted only to the highest court. Right, but that's the only question there that talks about exhaustion in order to perfect a habeas petition. And this is a court-generated form that the pro se petitioners use all the time, and that's their exhaustion question. You're saying implicit in that is that it went through the whole system? Correct. Okay. And with regard to the... I should also stop you there, though. Okay. If it's implicit in that, that sounds a lot different than it being an express waiver. Sounds like an implicit waiver. The response was express. Oh, okay. The question implied something. Okay. Yeah. They weren't admitted as express. The question was the best that the form gave to the petitioner in order to express that it was exhausted all state remedies. And with regard to the state's argument that, well, at any time, the public defender could have filed a motion to move the case to the plenary calendar once she had a chance to review the petitioner's argument. We do state appeals all the time, and I said we've done that before. We've filed motions in the cases before the ASOA calendar and asked for it to be removed to the plenary calendar. That's an option that's available to a defense attorney. But that option, she never filed that motion. You're saying she asked for it to be moved to the plenary calendar? Without any kind of briefing, without any kind of suggestion to the court why that's appropriate. And that's rarely, if ever, going to work. Right. It's an unserious way to try to move it to the plenary calendar. But does that matter for purposes of Flores-Ortega, which just looks at whether the notice of appeal kept that option opened, regardless of whether counsel later really vigorously went for it or whether they didn't? Flores-Ortega just seems to say at the time the notice of appeal was filed, you know, we're going to evaluate what your appellate options are. I think it goes back to the beginning where if the public defender had read the appeal transmittal request properly and submitted the case information statement properly, never would have had to file that motion. Never would have been required because it would have been on that track already. But I think that assumes a very strong reading of Flores-Ortega that it must preserve A, all appellate options, and B, on equal footing. And I don't know that Flores-Ortega does either, but B is a little bit of a, you know, further out bridge than A. Flores-Ortega doesn't say all your appellate options have to be preserved on equal footing. No, it says a notice of appeal has to be filed. And if we look at it just in that binary question, was notice of appeal of the conviction filed? It never was. Because it was just a sentence? Right. All right. Thank you, Mr. Nettle. Thank you, Ms. Shoshua. We appreciate your patience. Thank you. It's always hard to go last, but very well done by both sides. Thank you. The court will take the matter under advisement. Thank you, Your Honors, and thank you to your staff and my adversary as well.